**The Honorable Marsha J. Pechman**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JUDI L. NICON-ORCUTT,

Plaintiff,

vs.

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN a/k/a and
d/b/a FOREMOST INSURANCE
COMPANY and FOREMOST INSURANCE
COMPANY,

Defendants.

No.  2:15-cv-00343-MJP

**FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN'S
MOTION FOR SUMMARY JUDGMENT**

**Noted for Motion Calendar:**

**Oral Argument Requested**

1    Defendant Foremost Insurance Company Grand Rapids, Michigan[1], (hereinafter

2    "Foremost") submits the following Motion for Summary Judgment.

3    ## I.    INTRODUCTION

4    This lawsuit arises out of an insurance claim involving a fire that occurred at a

5    manufactured home owned by the Plaintiff and insured by Foremost.  Foremost has extended

6    coverage for this claim and fully paid all covered benefits. This includes the full limits

7    available under the coverages for Plaintiff's Dwelling, Personal Property, Additional Living

8    Expenses, and Debris Removal.

9    Regardless, Plaintiff brought this action claiming that she is entitled to additional policy

10   benefits, including a claim for additional replacement costs under the Dwelling coverage, even

11   though she has not repaired the structure.  In order to recover replacement cost above the stated

12   limit in the policy, Plaintiff is required under the policy, and clear Washington Law, to actually

13   replace the subject property and actually incur the cost of doing so.

14   Plaintiff's additional claims for other benefits under the policy are barred by the fact the

15   full policy limits have already been paid and that no additional expenses have been incurred.

16   There was no breach of contract and Plaintiff's claims are legally and factually without merit.

17   Plaintiff has also asserted extra-contractual claims based on the alleged failure to pay

18   these additional policy benefits.  Plaintiff's extra-contractual claims are legally without merit.

19   Foremost's conduct in the handling of Plaintiff's claim was reasonable at all times and Plaintiff

20   is unable to demonstrate any actual damages caused by any acts or omissions of Foremost.

21   Foremost respectfully requests that the Court dismiss Plaintiffs' contractual and extra-

22   contractual claims with prejudice and without recovery.

23

---

[1] Foremost Insurance Company is an improperly joined entity.  Foremost Insurance Company Grand Rapids, Michigan is the only insuring entity which provided insurance coverage to the Plaintiff.

MOTION FOR SUMMARY JUDGMENT – 1
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## II.    FACTS

**A.    <u>Background</u>**

Plaintiff Judi Nicon-Orcutt owned a manufactured home located in Maple Falls, Washington.  Examination Under Oath, **Exhibit A** to Lether Decl., p. 8, l. 15-18.  At the time of the loss, the property was being foreclosed upon and the Plaintiff had not paid her mortgage for approximately one year prior to the loss.  **Exhibit 2** to Stirling Decl., p. 3. The foreclosure was scheduled for December of 2013.  **Exhibit 2** to Stirling Decl., p. 3.

In the early hours of November 11, 2013, a fire occurred at the Plaintiff's manufactured home.  **Exhibit A** to Lether Decl., p. 5, l. 9-13.  On the night of the fire, the Plaintiff was at the Casino with her son Jesse Orcutt.  **Exhibit A** to Lether Decl., p. 85, l. 12-13.  The Casino closed at 1:00am.  **Exhibit A** to Lether Decl., p. 86, l. 5-6. Plaintiff alleged she and her son Jesse left the casino at that time.  Thereafter, the Plaintiff claimed that she and her son Jesse drove from the Casino to Jesse's apartment in Bellingham. **Exhibit A** to Lether Decl., p. 86, l. 10-12.    The drive from the Nooksack Casino to Jesse's apartment takes approximately 25 minutes.  **Exhibit A** to Lether Decl., p. 86, l 13-15. On the way to Jesse's apartment, Plaintiff was allegedly contacted about the fire. **Exhibit A** to Lether Decl., p. 86, l. 16-18.  Plaintiff then testified that she was notified of the fire at 1:30am.  **Exhibit A** to Lether Decl., p. 87, l. 21-23. The fire was reported to the fire department at 2:05 am. The Plaintiff was notified of the fire at 2:21 a.m. on November 11, 2015. **Exhibit 21** to Stirling Decl.  Plaintiff was unable to provide any explanation for the missing thirty (30) minutes in her account.  **Exhibit A** to Lether Decl., p. 129 - 130.  As a result of this timeline, Plaintiff and her son could not account for their whereabouts at the time the fire actually started.

MOTION FOR SUMMARY JUDGMENT – 2
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1       Additionally, at the time of the loss the Plaintiff owned the property adjacent to hers.

2  The adjacent property also had a manufactured home which was rented to the Plaintiff's other

3  son, Justin Orcutt.

4       The Whatcom County Sherriff's office investigated the cause and origin of this fire.

5  Specifically, the Sherriff's Office interviewed the Plaintiff in regard to the fire.  This interview

6  focused on Plaintiff's whereabouts on the night of the fire, her delinquent mortgage payments,

7  and whether she was aware of anyone that may have set the fire. The Sherriff also attempted to

8  review her call history on her phone.  However, the Plaintiff had deleted her call history shortly

9  after the fire.  **Exhibit 6** to Stirling Declaration**.**

10      Based on the burn patterns and lack of ignition sources, the Whatcom County Fire

11  Marshall determined that the cause of the fire was arson in the first degree.  **Exhibit 6** to

12  Stirling Declaration**.**  The Fire Marshall determined that an ignitable liquid was poured on the

13  floor next to the bed and ignited by a hand held device to start the fire.  **Exhibit 3** to Stirling

14  Declaration  The Sherriff also wanted to conduct the polygraph examination of the insured.

15  However, the Plaintiff never appeared for a polygraph examination.

**B.**    <u>**Plaintiff's Claim and Foremost's Initial Investigation**</u>

17      Following the subject fire, Plaintiff submitted a claim to Foremost.   Foremost promptly

18  acknowledged notice of the claim and began its investigation.  Stirling Decl. ¶ 3. Foremost

19  immediately placed the Plaintiff in a temporary residence and started looking for a temporary

20  comparable rental while repairs were completed.  Stirling Decl. ¶ 4.  Once a suitable residence

21  was identified, Foremost fully covered the rental costs of the premises.  Stirling Decl. ¶ 5.

22      The day after the fire, Foremost also provided Plaintiff with a $5,000.00 advance for

23  immediate replacement of her contents lost in the fire.  Stirling Decl. ¶ 6.

MOTION FOR SUMMARY JUDGMENT – 3
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    Thereafter, Foremost retained a Fire Cause and Origin Specialist, Q Global, to
2 investigate the loss.  On November 19, 2013, Q Global issued a report regarding its findings.
3 **Exhibit 2** to Stirling Decl.  Q Global was unable to identify any accidental source of ignition.
4 *Id.* Additionally, the Q Global report also indicated that the Plaintiff was over a year behind on
5 her mortgage and the residence was scheduled to be auctioned the following month.  *Id.*  In
6 light of the lack of an identifiable accidental cause, and considering a possible financial
7 motive, Q Global concluded that it was possible that the fire was incendiary in origin.  *Id.*

8    In addition to retaining its own cause and origin expert, Foremost took steps to secure
9 the investigative reports prepared by law enforcement with regard to the fire.  Stirling Decl. ¶
10 9.  Law Enforcement informed Foremost that they believed the fire to be incendiary in origin.
11 **Exhibit 3** to Stirling Decl.

12    Despite these reports, Foremost did *not* deny Plaintiff's claim.  Rather, in light of the
13 conclusions of the Whatcom County Fire Marshall and Q Global, Foremost continued to
14 investigate the fire loss.  Stirling Decl. ¶ 12.

15    In order to secure more information about the cause of loss and the claim, Foremost
16 requested that the insured appear for an Examination Under Oath (EUO) on March 27, 2014.
17 The EUO was particularly necessary for this loss because Foremost needed additional
18 information and details with regard to Plaintiff's activities and whereabouts on the night of the
19 fire.  Stirling Decl. ¶ 22.  Additionally, Foremost required additional information with regard to
20 whether the dwelling was going to be replaced.

21    On March 27, 2014, Foremost conducted the EUO of the Plaintiff.  As set forth above,
22 the Plaintiff testified that at the time of the fire she was on her way to drop her son off at his
23 apartment in Bellingham.  See EUO, **Exhibit A** to Lether Decl., p. 86, l. 10-12.  However,

MOTION FOR SUMMARY JUDGMENT – 4
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1  Plaintiff's account of her whereabouts at the time of the fire were not consistent.  Specifically,

2  Plaintiff was unable to account for the span of time immediately prior to the fire which is

3  addressed above.  **Exhibit A** to Lether Decl., p. 129-130.

4  Following the EUO, Foremost continued its investigation into the claim and all possible

5  causes of the fire.  Stirling Decl. ¶ 23.  Specifically, Foremost attempted to interview the

6  Plaintiff's son, Jesse Orcutt. Stirling Decl. ¶ 23. Jesse was the only other person with the

7  Plaintiff for the hour and twenty minute period prior to the fire.  Foremost requested the

8  opportunity to interview Jesse on March 31, 2014.  **Exhibit 7** to Stirling Decl**.**  On May 12,

9  2014, counsel for Plaintiff agreed to Foremost interviewing Jesse.  **Exhibit 12** to Stirling Decl**.**

10  Foremost followed up several times to schedule the interview with Jesse.  **Exhibits 13, 14, and**

11  **15** to Stirling Decl**.**  However, on July 8, 2014, counsel for Plaintiff informed Foremost that

12  Jesse was unwilling to discuss this matter with Foremost.  **Exhibit 16** to Stirling Decl**.**

13  Additionally, Foremost attempted to obtain the cell phone call records of the Plaintiff

14  through her cell phone service provider.  Foremost first requested the Plaintiff's cell phone

15  records on December 4, 2013, less than 30 days after the loss.  Stirling Decl. ¶ 33. On

16  December 11, 2013, Plaintiff agreed to obtain those records.  Stirling Decl. ¶ 33.  On May 27,

17  2014, Plaintiff informed Foremost that the Plaintiff's cellular phone provider would not

18  produce the cell phone records older than 90 days without a subpoena.  **Exhibit 18** to Stirling

19  Decl**.**

20  Due to the fact there was no pending suit, obtaining records through a subpoena was

21  not practical.

22

23

MOTION FOR SUMMARY JUDGMENT – 5
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1       Finally, Foremost continued to communicate with the Whatcom County Sherriff

2   regarding their investigation.  Additionally, Foremost attempted to confirm the time of the 911

3   call in light of the cell phone carrier's refusal to provide cell phone records.

4   **C.**     **Foremost's Attempts to Settle the Claim.**

5       Regardless of the above issues, Foremost continued to attempt to adjust and resolve all

6   outstanding issues with regard to this claim.  Stirling Decl. ¶ 21. On August 18, 2014, the

7   parties entered in to a confidential mediation agreement with regard to this claim.  **Exhibit 22**

8   to Stirling Decl. Pursuant to the mediation agreement, all communication with regard to this

9   claim would be confidential between the parties.  **Exhibit 22** to Stirling Decl.  On September

10  19, 2014, Plaintiff's counsel presented Foremost with his explanation regarding the coverage

11  issues.  Thereafter, on October 6, 2014, Foremost responded with its explanation of the

12  coverage issues.  Again on October 16, 2014, Foremost provided an amended explanation

13  regarding the coverage issues.

14      Regardless, in its October 16, 2014, letter Foremost offered to pay the mortgage

15  balance owed to the mortgage holder for the property pursuant to the loss payee provisions in

16  Plaintiff's policy.  Deposition of Plaintiff, **Exhibit C** to Lether Decl., p. 197, l. 19 – P 198, l.1.

17  In response to that offer, on November 3, 2014, Plaintiff advised Foremost that she was

18  negotiating with her mortgage holders to reduce her mortgage obligation.  Specifically, she was

19  attempting to get her mortgage holders to reduce the balance on the loan because of a claimed

20  hardship involving the fire.  This included advising her bank that part of the hardship involved

21  Foremost not paying the structure claim.  As a result, Plaintiff asked that Foremost not issue a

22  payment on the Dwelling claim because of her negotiations with the bank.  **Exhibit C** to Lether

23

MOTION FOR SUMMARY JUDGMENT – 6
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    Decl., p. 230, l. 9 - 17.   This was confirmed by Plaintiff in deposition in which she testified as

2    follows:

3              Q.    Foremost offered to pay a portion of the structured claim,
                     correct?
4              A.    Correct.
               Q.    And you took the position --
5              A.    In full.
               Q.    And you took the position we don't want you to issue that
6                    payment until we try to get a loan reduction from Caliber
                     and potentially Whatcom, correct?
7              A.    Correct.
               Q.    And because you made that request, Foremost didn't issue
8                    any payments on the structure claim; is that right? This is in
                     the fall of 2014?
9              A.    Correct.

10   **Exhibit C** to Lether Decl., p. 230, l. 9 - 17.

11        Obviously, had Foremost paid the inured and the bank Plaintiff could not proceed with

12   her hardship claim.   As a result, Foremost complied with the Plaintiff's request to withhold

13   payment and did not issue payment under the Dwelling coverage at that time.   Lether Decl ¶ 4.

14   During this time Plaintiff also failed to take any action to repair the dwelling or remove any of

15   the fire debris.

16   **D.        Foremost's Payment of All Available Limits.**

17        On Friday, January 9, 2015, Plaintiff sent a letter to Foremost explaining that her

18   attempts to reduce her mortgage obligations had failed.   **Exhibit 25** to Stirling Decl.   At that

19   time, Plaintiff demanded an immediate coverage determination and payment of the claim.   *Id.*

20        The next business day, Monday, January 12, 2015, Plaintiff issued an Insurance Fair

21   Conduct Act 20-day notice to Foremost Insurance Company.   The basis for this IFCA claim

22   was that Foremost had not paid the claim.   This ignored Plaintiff's prior requests that Foremost

23   not issue payment on this claim.

MOTION FOR SUMMARY JUDGMENT – 7
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Within two days of receiving the IFCA notice, and within four (4) business days of receiving Plaintiff's demand for payment of the claim, Foremost accepted coverage for the subject loss.  **Exhibit 27** to Stirling Decl.  Specifically, Foremost's January 14, 2015, correspondence extending coverage stated as follows:

> Foremost Insurance is extending coverage for Ms. Nicon-Orcutt's above referenced claim.
> . . .
> Foremost is extending coverage as follows:
>
> Coverage A - Dwelling: $98,033.00.
> Coverage C - Personal Property: $49,016.00
> Coverage D - Additional Living Expense: $19,607.00
> Additional Coverage for Debris Removal: $5,000.00

**Exhibit 27** to Stirling Decl.

The amounts for each coverage part above were the full limits of coverage under the policy for each coverage based on the current status of the claim and Plaintiff's failure to repair. Stirling Decl. ¶ 45.  In fact, Foremost had already paid the full limit of coverage of Additional Living Expenses.  Stirling Decl. ¶ 45.  Further, Foremost extended full coverage for any other available coverages, including extended replacement cost, debris removal, and ordinance or law coverage.  It was explained to Plaintiff that additional amounts would be paid if incurred pursuant to the terms of the policy. **Exhibit 27** to Stirling Decl.  To date, Plaintiff has still not repaired the dwelling or removed any debris.

**E.      Instant Action.**

Despite Foremost's extension of coverage, on February 6, 2015, Plaintiff filed the instant lawsuit claiming that Foremost breached the policy and asserting certain extra-contractual claims.  Specifically, the Plaintiff has alleged extra-contractual causes of action under the Washington Consumer Protection and Insurance Fair Conduct Act.

MOTION FOR SUMMARY JUDGMENT – 8
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

III.    ARGUMENT

A.    **Summary Judgment Standard**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56.  Once the movant has submitted its evidence, the burden shifts to the party opposing the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029 (2007).  The opposing party must set forth specific facts to demonstrate that a genuine issue of material fact exists.  FRCP 56 (c), (e); *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (2008).  Unsupported self-serving allegations, legal argument, and conclusory statements in a memorandum of authorities are insufficient to demonstrate such an issue.  *Nelson v. Pima Cmty, Coll.*, 83 F.3d 1075 (1996). If the opposing party fails to controvert pertinent facts supporting the motion, those facts are deemed to have been proven.  *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308 (1977).

A Motion for Summary Judgment should be granted whenever the party opposing the motion "fails to . . . establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex,* supra. "In such a situation, there is 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, supra, at 322-23.

B.    **Policy Construction and Interpretation**

In Washington, insurance policies are construed as contracts.  *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378, 917 P.2d 116 (1996).  It is the obligation of a court to enforce the

1   terms and conditions of the policy as written.  *Id.*   Interpretation of an insurance policy is a

2   question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002).

3       Definitions provided in the policy are controlling. *Overton, supra* at 427.  However, if a

4   term is left undefined, it is given the plain and ordinary meaning found in a Standard English

5   dictionary.   *Id.* at 428; see also *Queen City Farms v. Cent. Nat'l Ins.*, 126 Wn.2d 50, 77, 882

6   P.2d 703 (1994).   A court may deviate from this general rule only if the policy language is

7   determined to be ambiguous or if there are conflicting terms in the policy.  *Stanley v. SAFECO*

8   *Ins. Co. of Am.*, 109 Wn.2d 738, 741 747 P.2d 1091 (1988).  An ambiguity exits only if the term

9   or provision is reasonably susceptible to two meanings.  *Id*.  Simply because the policy is

10  confusing or difficult to read does not render the policy ambiguous.  *McDonald*, 119 Wn.2d at

11  734.  The terms of a policy are given a fair and reasonable construction that would be given to

12  the contract by the average person buying insurance.  *Id.* at 733.

13      In order for a party to present a claim for breach of contract, the party must establish the

14  following elements. A plaintiff in a contract action must prove a valid contract between the

15  parties, breach, and resulting damage.  *Lehrer v. State, Dept. of Social and Health Services*, 101

16  Wn.App. 509, 516, 5 P.3d 722 (2000) *citing Northwest Independent Forest Mfrs. V. Department*

17  *of Labor & Indus.,* 78 Wn.App. 707, 712, 899 P.2d 6 (1995).

18      In the context of an insurance claim, the insured bears the initial burden of proof in

19  establishing that the loss is covered.  Only if the insured meets this burden of proof in

20  establishing that a claim is potentially covered, does the burden shift to the insurer to establish a

21  controlling exclusion or limitation. *McDonald, supra* at 731. *Overton, supra* at 431-432.

22  **C.**   **Plaintiff's Breach of Contract Claims Should be Dismissed.**

23

MOTION FOR SUMMARY JUDGMENT – 10
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Foremost has never denied coverage for Plaintiff's claim.  **Exhibit 27** to Stirling Decl. To the contrary, Foremost has paid all benefits under the Policy to which Plaintiff is entitled. Plaintiff's claims for additional policy benefits are entirely without merit given the fact that Plaintiff has not incurred any expenses in replacing the property.

> ### 1.     *The Coverage for the Dwelling Was Fully Extended.*

The Policy provides coverage for the dwelling according to the following terms:

> **Coverage A — Dwelling**
> We insure:
> 1.  Your dwelling that is described on the Declarations Page.
>
> 2.  Materials and supplies for use in the construction, alteration or repair of your dwelling located within or immediately adjacent to your dwelling.
>
> 3.  Any structure you own that is attached to your dwelling other than a structure attached only by a fence, utility line, or similar connection.

**Exhibit 28** to Stirling Decl. p. 8.

Pursuant to the Policy, where a total loss occurs, Foremost will pay the Amount of Insurance on the Declarations Page. Foremost fully paid the Amount of Insurance on the declarations page for the Dwelling in the amount of $98,033.00.  Stirling Decl. ¶ 45.

In addition, the Foremost policy provides for additional replacement cost coverage. The policy provides as follows:

> **SECTION I — Our Payment Methods**
> **Coverage A — Dwelling**
> **Total Loss**
> **Agreed Loss Payment Method**
>
> A total loss occurs when your dwelling is damaged beyond reasonable repair.
>
> When a total loss occurs, your loss will be equal to the Amount of Insurance shown on the Declarations Page.

MOTION FOR SUMMARY JUDGMENT – 11

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

> . . .
> If you do replace your dwelling on the same **premises** with a new
> dwelling of like kind and quality within 365 days of the loss, and if
> the cost to replace your dwelling e**x**ceeds the Amount of insurance
> we have already paid to you, we will pay the additional amount
> that you actually spend for the replacement. But we will not pay
> any more than an additional 20% of the Amount of Insurance
> shown on the Declarations Page.

**Exhibit 28** to Stirling Decl. p, 41

Pursuant to the foregoing, the Extended Replacement Cost Coverage for the Dwelling

and the Debris Removal coverage is only paid **once those costs have been incurred**. **Exhibit**

**28**, p 41 to Stirling Decl.

It is undisputed that Plaintiff did not incur any costs with regard to replacement of the

dwelling within that time period.   Specifically, the Plaintiff testified as follows during her

September 1, 2015, deposition:

> Q.    So did you understand that you're entitled to an additional
>       19,606 on the dwelling coverage; is that right?
> A.    Correct.
> Q.    Is it your understanding that you have to actually replace
>       the home before you get that money?
> A.    Right.
> Q.    At this point you have not replaced the home, correct?
> A.    Correct.

**Exhibit C**, to Lether Decl., p. 95, l. 4-13.

> Q.    None of those building code costs, building compliance,
>       permitting expenses, none of those costs  have been
>       incurred yet, you haven't spent any money?
> A.    No.

**Exhibit C**, to Lether Decl., p. 103, l. 18-21.

"Under the indemnity principle of insurance, an insured receives only that amount that

will indemnify actual loss, not an additional windfall above this amount." *Dombrosky v.*

*Farmers Ins. Co*., 84 Wn. App. 245, 928 P.2d 1127, 1136, n.4 (Wash. Ct. App. 1997); *Hess v.*

---

MOTION FOR SUMMARY JUDGMENT – 12

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

*North Pac. Ins. Co.,* 122 Wn.2d 180, 183-84, 859 P.2d 586 (1993).  Where a damaged structure is not repaired or replaced there is no coverage available for additional replacement costs unless they are actually incurred.  MKB Constructors v. Am. Zurich Ins. Co., 49 F. Supp. 3d 814, 827 (W.D. Wash. 2014).

In the context of virtually identical policy language, the Washington Courts have held that the actual replacement requirement for purposes of recovering replacement cost is unambiguous, valid, and enforceable.  *Dombrosky, supra*; *Hess, supra*. Pursuant to *Dombrosky* and *Hess,* an insurer may limit coverage for property damage to the actual cash value of the damage until actual repair or replacement is completed.

> This language establishes a process whereby the insurer first pays the actual cash value of the property to the insured. If repair or replacement of the property amounts to more than the actual cash value, an additional claim is made to collect that loss, up to the policy limits. This type of limitation has been upheld by our Supreme Court.  *Hess v. North Pac. Ins. Co., 122 Wn.2d 180, 183-84, 859 P.2d 586 (1993).*

*Dombrosky*, 84 Wn. App. at 254

In *Dombrosky*, the Court specifically found that the insureds were limited to actual cash value because the insureds presented no evidence that they replaced the residence.

> The Dombroskys have presented no evidence that they have acted to repair or replace the structure. They now reside in Arizona and the Roy property remains in the same condition as immediately after the fire. Therefore, under the contract, the Dombroskys are limited to the actual cash value of the property.

*Dombrosky*, 84 Wn. App. at 254

In this case, not only is there no evidence of replacement, but Plaintiff has *admitted* that she has not replaced the dwelling.  As in *Dombrosky*, Plaintiff is limited to actual cash value.

MOTION FOR SUMMARY JUDGMENT – 13
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    Pursuant to the clear and unambiguous language of the policy and clear Washington law,

2    Plaintiff is not entitled to any further benefits under the Dwelling coverage.

3        **2.      *Debris Removal Coverage was Fully Extended.***

4        The Foremost policy provides additional coverage for debris removal in certain

5    circumstances.  Specifically, the Foremost policy provides as follows:

6           1.   **Debris Removal.** We will pay the actual, reasonable and
             necessary cost for the removal of debris of insured property,
7            other than trees, from your **premises** when deposited by an
             Insured Peril that applies to the insured property.

8
             The debris removal cost is included in the Amount of
9            Insurance that applies to the damaged property. If the amount
             to be paid for the actual damage to the property plus the debris
10           removal cost is more than the Amount of Insurance for the
             damaged property, we will pay up to an additional 5% of the
11           Amount of Insurance for Coverage A- Dwelling, or $5,000,
             whichever is greater, for debris removal.

12   **Exhibit 28** to Stirling Decl., p. 11

13
         Pursuant to the policy, Foremost will pay the actual, reasonable, and necessary cost for
14
     the removal of debris from the insured property.  **Exhibit 28** to Stirling Decl., p. 11.

15       On January 14, 2015, Foremost fully extended coverage for the debris removal

16   coverage.  Specifically, the letter states:

17           Pursuant to the policy, Foremost is extending additional coverage
             for debris removal in the amount of $5,000.00. **This coverage**
18           **paid once it has been incurred**.

19   **Exhibit 27** to Stirling Decl. *Emphasis Added.*

20       In fact, Plaintiff admits that she has not incurred any costs for debris removal.  Again,

21   during her September 1, 2015, deposition, Plaintiff testified as follows:

22           Q.      Then on debris removal, I understand you have the $7,000
                     estimate. I understand you've not actually  spent any money
23                   on debris removal at this point?

MOTION FOR SUMMARY JUDGMENT – 14

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1        A.       Correct.

2   **Lether Decl. Exhibit C**, p. 101, l. 21-24.

3        As with the dwelling replacement costs discussed above, the debris removal cost must

4   actually be incurred prior to being paid under the policy.   As set forth above, the Washington

5   Courts specifically authorize policy provisions requiring that certain costs be incurred before the

6   costs become due under the policy.  *Dombrosky, Hess, supra.*

7        Here, the Plaintiff claims that Foremost has breached the policy by not issuing a check

8   for debris removal costs.  Dkt. 18.  However, Plaintiff also admits that she has not actually

9   incurred those costs.  **Exhibit C** to Lether Decl, p. 101.

10       Foremost has extended coverage for debris removal to the full limit of coverage.

11  Foremost will fully pay all covered debris removal costs once those costs are incurred.  As a

12  result, Foremost has not breached the policy with regard to this coverage.

13       *3.       Plaintiff's Demand for Additional Policy Benefits for the Deck is*
          *Unsupported.*

14

15       The dwelling in this claim contains a front deck which is attached to the dwelling.  The

    deck was a total loss as a result of the fire.

16

17       Foremost has paid the full limit of coverage for the deck under Coverage A.

18  Specifically, Coverage A provides coverage for the main dwelling as described in the

    Declarations Page, as well as "any structure owned by the insured that is attached to the

19  dwelling."  **Exhibit 28** Stirling Decl., p. 8.  As a result, Coverage A includes coverage for the

20  deck attached to the front of the dwelling. The limit of coverage under Coverage A has been

21  fully paid to the Plaintiff.

22

23

MOTION FOR SUMMARY JUDGMENT – 15
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

1  Regardless, Plaintiff claims that Foremost should have paid for the deck as a separate

2  structure under Coverage B.  Coverage B provides coverage for other structures which are not

3  attached to the main dwelling.

4  Plaintiff has no actual evidence to show that that the deck was not attached to the main

5  dwelling.  To the contrary, it is undisputed that the subject deck was attached to the main

6  residence by metal brackets or "hurricane clips".  The following is a photograph of the

7  connection between the deck and the main residence.  This photo was taken during the course

8  of Foremost's investigation.  **Exhibit 1** to Stirling Decl.



Photo showing front deck tied into main structure.

**Exhibit 1** to Stirling Decl.

Pursuant to the photo above, the deck is clearly attached to the main structure.    The

Plaintiff's own expert admits that the deck was attached to the main residence.  **Exhibit B** to

Lether Decl.  Specifically, the Plaintiff's expert stated as follows:

My examination disclosed that the roof area of the porch section,
which consists of wood structural support with a fiberglass roof

finish has what is generally referred to as a "hurricane clip", which is a metal strap, that is attached to a west side wood component of the roof of the covered porch and to the soffit board of the main residential structure.

**Exhibit B** to Lether Decl.

Based on the actual evidence above, the deck is covered under Coverage A of the Foremost policy.  Foremost has paid the full limits of coverage for Coverage A pursuant to the terms of the policy.  As a result, Plaintiff's claim for additional policy benefits with regard to the deck is without merit.

## C.   Plaintiff's Extracontractual Claims Should be Dismissed.

The Plaintiff has set forth the following extracontractual causes of action:

- Violation of the Washington Insurance Fair Conduct Act
- Violation of the Washington State Consumer Protection Act

Each of these causes of action is addressed below.[2]

### 1.   Plaintiff's Cause of Action for Violation of the Washington Insurance Fair Conduct Act Is Without Merit.

The Washington Insurance Fair Conduct Act, RCW 48.30.015 (hereinafter "IFCA") provides a cause of action for first-party claimants where there is an unreasonable denial of coverage and actual damages.  For the reasons discussed below, the Plaintiff is unable to meet her burden to sustain a cause of action under IFCA.

#### a.   Plaintiff's IFCA Claim Fails on Its Merits.

This Court must dismiss the Plaintiff's cause of action for failure to meet the elements of an IFCA claim.  The IFCA statute, RCW 48.30.015, states as follows:

---

[2] It is conceivable that the Plaintiff intended to allege some type of a bad faith claim. However, there is no cause of action, set forth anywhere in the complaint for a tort bad faith claim. Additionally, there is no cause of action asserted for attorney fees under *Olympic Steamship v. Centennial Insurance.*  The deadline to amend pleadings in this case expired on June 12, 2015. As a result, those causes of action are not addressed in this motion.

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

(1)    Any first party claimant to a policy of insurance who is *unreasonably* denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, . . .(emphasis added)

Pursuant to the foregoing, in order to maintain an IFCA action, a plaintiff must show (1) an unreasonable denial of a claim for coverage and (2) actual damages sustained therefrom. RCW 48.30.015.

This issue has been specifically addressed by this Court in *Pinney v. Am. Family Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 22328, 2012 WL 584961 (W.D. Wash. Feb. 22, 2012).  This Court held that a party asserting an IFCA claim must show an *unreasonable denial* of benefits under the policy.  Specifically, this Court held:

Without an unreasonable denial of coverage, IFCA claims under individual WAC violations fail.

*Pinney v. Am. Family Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 22328, 2012 WL 584961 (W.D. Wash. Feb. 22, 2012).

Further, Washington Courts have held as follows:

Irrespective of the diputed [sic] time frames, the purported delay in acknowledgement of the tender and completion of an investigation was not unreasonable and not a violation of the IFCA. Although violations of the enumerated regulations provide grounds for trebling damages or for an award of attorney's fees; they do not, on their own, provide a IFCA cause of action absent an unreasonable denial of coverage or payment of benefits.

Violations, if any, of the 10 and 30 day time periods for acknowledging a claim and completing an investigation, are simple technical violations and standing alone, do not evidence any unreasonable conduct on the part of Navigators in promptly responding to the tender.

*Cardenas v. Navigators Ins. Co.,* 2011 U.S. Dist. LEXIS 145194 (2011)(Internal Citations Omitted). *See also*; *Weinstein & Riley, P.S. v. Westport Ins. Corp.,* No. C08-1694 JLR, 2011 U.S. Dist. LEXIS 26369, 2011 WL 887552 (W.D. Wash. March 14, 2011); *Travelers Indent Co. v. Bronsink,* No.008-1524 JLR, 2010 U.S. Dist. LEXIS 2118, 2010 WL 148366 (W.D. Wash. Jan 12, 2010); *Lease Crutcher Lewis WA, LLC v. Nat. Union Fire Ins. Co. of Pittsburgh,*

MOTION FOR SUMMARY JUDGMENT – 18
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1   *PA,* No. C08-1862 RSL, 2010 U.S. Dist. LEXIS 110866, 2010 WL 4272453 (W.D. Wash.

2   Oct.15, 2010).

3      Plaintiff cannot meet her burden of proving that she is entitled to recovery under IFCA.

4   As a result, her claims are without merit.

5      **i. *Foremost Never Unreasonably Denied a Claim for Coverage.***

6      IFCA only applies to the "unreasonable" denial of benefits under the policy.  Foremost

7   never denied coverage to the Plaintiff and has never unreasonably denied any benefit to the

8   Plaintiff.  **Exhibit 27** to Stirling Decl.  As is demonstrated by the record before this Court,

9   Foremost's conduct was reasonable at all times in the handling of the subject insurance claim.

10  *Cardenas v. Navigators Ins. Co.*, 2011 U.S. Dist. LEXIS 145194 (W.D. Wash. Dec. 16, 2011).

11     Moreover, a technical regulatory violation in the absence of an unreasonable denial does

12  not trigger an IFCA claim.  *Pinney v. Am. Family Mut. Ins. Co.*, 2012 U.S. Dist. LEXIS 22328,

13  *13 (W.D. Wash. Feb. 22, 2012), *Cardenas v. Navigators Ins. Co.*, 2011 U.S. Dist. LEXIS

14  145194, 2011 WL 6300253 (W.D. Wash. Dec. 16, 2011).

15     The Plaintiff cannot demonstrate any unreasonable conduct on the part of Foremost.  To

16  the contrary, Foremost acted reasonably with regard to the handling of this claim.  Specifically,

17  initial reports of the fire indicated that the fire was incendiary in origin.  **Exhibit 3** to Stirling

18  Decl. Additionally, initial reports indicated that the insured was under considerable financial

19  distress, including a pending foreclosure on her home.  **Exhibit 2** to Stirling Decl. As a result,

20  Foremost continued its investigation into the fire and its cause.  In order to determine if the fire

21  was intentionally set, Foremost conducted the examination under oath of the Plaintiff.  **Exhibit**

22  **A** to Lether Decl. The Plaintiff's account of her whereabouts on the night of the fire were

23  inconsistent with the reports from the Fire Department.  **Exhibit A** to Lether Decl., p. 85-86.

    Further, her timeline of her whereabouts at the time of the fire left a time period of

    approximately 40 minutes unexplained and unaccounted for.  *Id.* Foremost continued its

---

MOTION FOR SUMMARY JUDGMENT – 19
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

1    investigation to determine the Plaintiffs' whereabouts at the time of the fire.  To date, the

2    Plaintiff has not provided any reasonable account of her whereabouts at the time of the fire.

3        Regardless, Foremost attempted to pay the loss payee mortgage holders, but the

4    Plaintiff requested that Foremost withhold payment while she negotiated with the mortgage

5    holders to reduce her mortgage obligation.   **Exhibit C** to Lether Decl., p. 197, l. 19 – P 198,

6    l.1.  Ultimately, the insured's negotiations with her mortgage holders failed and she requested

7    immediate payment of the claim.   **Exhibit 25** to Stirling Decl.  Foremost fully extended

8    coverage and paid the claim within five (5) days of this request.  *Id.*

9        On January 14, 2015, and prior to an IFCA claim being filed, Foremost extended

10   coverage for the loss and paid all benefits to which Plaintiff was entitled.  Foremost never

11   denied these benefits.  Rather, the Plaintiff's sole claim for damages is based on policy benefits

12   which are not yet due or owing under the policy.  However, Foremost has fully extend coverage

13   for the claimed benefits, to the extent they are actually incurred pursuant to the terms of the

14   policy. The Plaintiff may not bring an action for IFCA violations on this basis alone.

15              ***ii.    Plaintiff Cannot Demonstrate "Actual Damages" Proximately
                         Caused by Any Unreasonable Denial.***

16

17       Additionally, a first party claimant that has been unreasonably denied a benefit may

18   bring a private cause of action under IFCA only for "actual damages sustained." Under IFCA,

19   an insurer is liable only for those damages proximately caused by the unreasonable denial.

20   *Schreib v. Am. Family Mut. Ins. Co.,* 2015 U.S. Dist. LEXIS 118189, 13 (W.D. Wash. Sept. 3,

21   2015); *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1312 (W.D. Wash. 2013). In fact,

22   attorneys' fees and other litigation costs are not "actual damages" under IFCA.  *Schreib, supra*.

23   In other words, an IFCA claimant must prove actual damages proximately caused by the

     unreasonable denial of benefits.

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    There is absolutely no evidence before this Court indicating that Plaintiff has suffered

2    actual damages as a result of any act or omission of Foremost.  The only damages that Plaintiff

3    has alleged to have suffered as a result of the insurance claim are emotional distress damages,

4    fees, damages unrelated to the claim. **Exhibit B** Lether Decl.  However, this Court has held that

5    emotional distress damages are not "actual damages" under IFCA. *Schreib,* 2015 U.S. Dist.

6    LEXIS 118189 at 13.

7    Based on the foregoing, the insured is unable to prove the necessary "actual damages"

8    element of her IFCA claim.  In light of Plaintiff's failure on this element, and the elements

9    discussed above, the IFCA cause of action must be dismissed.

> ### b.   *Foremost Cured Any Potential Basis For a Cause of Action Within the 20 Day Period to Cure Under IFCA.*

11   As an initial matter, prior to filing a lawsuit, the claimant must provide the insurer 20

12   day notice of the basis for its cause of action.  RCW 48.30.015(8) provides as follows:

> (a)   Twenty days prior to filing an action based on this section, a first party claimant must provide written notice of the basis for the cause of action to the insurer and office of the insurance commissioner.

16   RCW 48.30.015 (8)(a)

17   Once a notice is sent to the insurer, IFCA provides for a 20 day period in which to cure

18   any alleged violation.

> (b)   If the insurer fails to resolve the basis for the action within the twenty-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice.

21   RCW 48.30.015 (8)(b); See also *Cardenas v. Navigators Ins. Co.*, 2011 U.S. Dist. LEXIS

22   145194, *17 (W.D. Wash. Dec. 16, 2011).

23   This Court has held that failure to strictly comply with the statutory notice requirement

is grounds for dismissal of an IFCA claim. *Madera West v. First Specialty Insurance*

MOTION FOR SUMMARY JUDGMENT – 21
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    *Corporation*, 2013 U.S. Dist. LEXIS 110688 (W.D. Wash. 2013); *see also Norgal Seatlle*

2    *P'ship v. Nat'l Sur. Corp.,* C11-0720-RSL, 2012 WL 1377762 (W.D. Wash. 2012).

3         Given the harsh punishment should an insurer unreasonably deny a claim, the IFCA

4    statute allows an insurer to resolve the basis for the action within twenty days of receiving the

5    notice.  Only after the insured fails to resolve the dispute during the twenty day period would

6    the insurer be exposed to the potential penalties of IFCA.

7         Plaintiff's actions here are in direct contradiction to the purpose of the statute and do

8    not advance the aim of its provisions.  Here, Plaintiff issued the 20 Day notice pursuant to

9    IFCA on January 12, 2015.  On January 14, 2015, Foremost extended coverage for this claim

10   and paid all benefits due and owing under the policy.  **Exhibit 27** to Stirling Decl.

11        This extension of coverage was sent only two days after the Plaintiff sent the IFCA

12   notice and cures the alleged basis for the Plaintiffs' claim by extending full coverage for the

13   loss. As a result, Foremost did all it could to remedy the alleged issues with Foremost's claims

14   handling, extend full coverage for the loss and immediately pay all amounts currently due and

15   owing under the policy.  Regardless, the Plaintiff filed this action, with an IFCA claim, in clear

16   violation of IFCA.

17   **D.**    **Plaintiff's Cause of Action for Violation of the Washington Consumer Protection**
              **Act Must Be Dismissed.**

18

19        The Washington Consumer Protection Act (CPA), RCW 19.86, prohibits unfair or

20   deceptive acts in trade or commerce and provides remedies including actual damages. In order

21   to prevail on a CPA claim, the claimant must satisfy the five-part test established in *Hangman*

22   *Ridge Training Stables, Inc. v. Safeco Title Insurance Co*. by showing:

23              (1) an unfair or deceptive act or practice;
                (2) in trade or commerce
                (3) that impacts the public interest,

MOTION FOR SUMMARY JUDGMENT – 22
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    (4) causes injury to the party in his business or property, and

2    (5) the injury is causally linked to the unfair or deceptive act.

3    105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

4    The question of whether an act or practice is actionable under the Consumer Protection

5    Act is a question of law.  *Dombrosky v. Farmers Ins. Co.*, 84 Wn. App. 245, 260, 928 P.2d

6    1127, *review denied*, 131 Wn.2d 1018, 936 P.2d 417 (1997).

7    An insured may establish a per se unfair trade practice under the CPA by demonstrating

8    a violation of RCW 48.30.010 based upon a violation of WAC 284-30-330.  *Dombrosky*, 84

9    Wn. App. At 260, 928 P.2d 1127.  However, even if there is a technical violation of a WAC

10    provision, the Washington Courts have held that reasonableness is a complete defense to a CPA

11    claim.   *Keller v. Allstate Ins*. Co., 81 Wn. App. 624, 634, 915 P.2d 1140 (1996).

12    Plaintiff cannot present any evidence of any unreasonable violation of any provision of

13    the Washington Administrative Code insurance trade practice regulations.  Rather, as set forth

14    in detail above, Foremost's conduct was reasonable at all times and Foremost paid all amounts

15    due and owing under the subject policy.

16    Finally, the Washington Courts have held that the CPA requires the injury to business

17    or property to be causally linked to the unfair or deceptive act.  *Schreib v. Am. Family Mut. Ins.*

18    *Co.,* 2015 U.S. Dist. LEXIS 118189, 15 (W.D. Wash. Sept. 3, 2015); *National Union Fire Ins.*

19    *Co. v. Greenwich Ins. Co.*, 2009 U.S. Dist. LEXIS 53085, 2009 WL 1794041, 5 (W.D. Wash.

20    June 22, 2009); *Hangman Ridge, supra*.

21    Plaintiff has neither alleged, nor can she prove, any injury to business or property

22    caused by any alleged act or omission of Foremost. Plaintiff's damages were caused by the fire

23    at her residence.  Specifically, Plaintiff testified as follows:

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1
2
3
4
5
6
7
8
9

> Q. Are you claiming that you had a business injury or harm to a
> business as a result of something Foremost did?
> A. Oh, I don't think I claimed that.
> Q. So you're not claiming any injury to a business as a result of
> something Foremost did; is that correct?
> A. To a business?
> Q. Yes.
> A. No, not to a business.
> . . .
> Q. And are you -- can you identify any injury to any actual
> property as a result of something Farmers or Foremost did or did
> not do?
> A. Injury to my property?
> Q. Injury -- any injury to any property as a result of something
> Foremost did or did not do?
> A. I don't believe so. I don't believe I fully understand the question,
> but I don't believe so. And I'll have to reserve that too.

10  **Exhibit C**, to Lether Decl., p. 266, l. 19 – p. 267, l.15.

11      Foremost paid all amounts that it was required to pay for the fire damage.  Emotional

12  distress damages, attorney's fees, and litigation costs are not injury to business or property for

13  purposes of a CPA claim.  *Schreib, supra*; *Physicians Ins. v. Fisons Corp.*, 122 Wn.2d 299, 858

14  P.2d 1054 (1993); *Sign-O-Lite Signs v. DeLaurenti Florists*, 64 Wn. App. 553. Plaintiff is

15  unable to meet her burden to establish the five elements of a consumer protection act claim.  As

16  a result, this Court should dismiss the Consumer Protection Act claim.

17                          **IV.     CONCLUSION**

18      Based on the foregoing, Foremost Insurance Company Grand Rapids, Michigan asks

19  that the Court grant Summary Judgment in its favor dismissing Plaintiff's causes of action in

20  their entirety and with prejudice.

21

22

23  *//*

MOTION FOR SUMMARY JUDGMENT – 24

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    DATED this 10th day of December, 2015.

2                                    LETHER & ASSOCIATES, PLLC

3                                    *s/ Thomas Lether*
                                     *s/ Eric Neal*
4                                    Thomas Lether, WSBA #18089
                                     Eric J. Neal, WSBA #31863
5                                    LETHER & ASSOCIATES, PLLC
                                     1848 Westlake Ave N, Suite 100
6                                    Seattle, WA 98102
                                     tlether@letherlaw.com
7                                    eneal@letherlaw.com
                                     *Attorneys for Defendant*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

MOTION FOR SUMMARY JUDGMENT – 25
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1

## CERTIFICATE OF SERVICE

2          The undersigned hereby certifies under the penalty of perjury under the laws of the

3   State of Washington that on this date I caused to be served in the manner noted below a true

4   and correct copy of the foregoing on the party mentioned below as indicated:

5   Jeffrey Thigpen
    1811 C Street
6   Bellingham, WA 98225

7
        **Via:        [X] ECF                [  ] E-mail                [  ] Via U.S Mail**

8          Dated this 10th day of December, 2015, at Seattle, Washington.

9

10                                        _s/ Nicholas McMurray_____
                                          Nicholas McMurray, Paralegal
11

12

13

14

15

16

17

18

19

20

21

22

23

MOTION FOR SUMMARY JUDGMENT – 26
S:\FILES\Nicon-Orcutt v. Foremost (litigation) 15033\Motions\SJ Motion\Final\151210 MSJ.002.docx

LETHER & ASSOCIATES PLLC.
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544